NATHAN W. WHITFIELD ET AL. *v.* ADELAIDE E. LYON.

[46 South. 545.]

1. VENDOR AND VENDEE. *Purchase money. Payment. Presumptions.*
   Where in a suit to cancel defendants' title, the charge being that
   the ancestor, from whom defendants acquired the land, as a part
   consideration for his purchase thereof, had undertaken to pay
   a large sum in discharge of the debts of his vendor, but had failed
   to pay a part, approximately one-fifth, thereof, and the proof show-
   ing that the title to one-half the lands had failed and that the
   vendor made no effort to make good his broken warranty, it was
   too late after thirty years acquiescence to claim that the pur-
   chaser, defendants' ancestor, was in default.

2. WILLS. *Life estate. Conveyance by life tenant.*
   Where a will devised land to testator's children for life, remainder
   to their children, with power in the life tenants to sell the land
   and invest the proceeds in other lands to be held under the same
   limitations and conditions, the contention cannot be maintained
   that a conveyance by the life tenants was in violation of the will
   and not for reinvestment (the purchaser having full knowledge in,
   the premises) so as to entitle the remaindermen to the land, be-
   cause part of the consideration was land, title to which was taken
   in the names of the life tenants without limitation over to their
   children and part of the money consideration was used to pay
   off liabilities of the life tenants, on the purchase money of an-
   other tract of land they had bought, taking title in their own
   names; their agreement of sale of the devised land expressly
   naming the other tract as one to be invested in under the terms
   of the will, it not appearing that their vendee had reason to
   know or believe that they would fail to settle the title accord-
   ingly.

3. SAME. *Mortgage on account of taxes.*

Although a will devising land to testator's children ror life, remainder to their children, gave the life tenants power only to sell for purposes of reinvestment, yet, there being taxes due on the land and the life tenants being unable otherwise to pay them, they may, where necessary to preserve the estate from forfeiture, mortgage a part of the land in fee to raise money to pay the taxes.

FROM the chancery court of Lowndes county.

HON. JAMES F. McCOOL, Chancellor.

Mrs. Lyon, appellee, was complainant in the court below: Whitfield and others, appellants, were defendants there. From a decree largely in complainant's favor, but not granting all relief for which she prayed, the defendants appealed to the supreme court and complainant prosecuted a cross-appeal.

The facts are sufficiently stated in, or are plainly apparent from, the opinion of the court.

*William Baldwin* for appellants and cross-appellees.

The rights of the Whitfield children to these lands are based upon the following propositions. Their grandfather, William Whitfield, certainly owned these lands, he certainly executed a will in which in clear and unmistakable terms and provisions he devised these lands to these appellants as tenants in remainder. The rights of appellees rest solely upon the deed of William W. Whitfield and Lucy A. Whitfield to Theodoric C. Lyon. Whatsoever rights Lyon obtained by this conveyance she has, no more and no less. What now were the rights of T. C. Lyon under this conveyance from William W. Whitfield and Lucy A. Whitfield?

We have by the will of William Whitfield, an express life estate given them, and added to this express life estate, a power of sale for reinvestment. Had this sale been made for cash, money in hand paid, it is not contended but that Lyon would have received a good title to the property.

The old English rule compelling a purchaser from a trustee

to look to the application of the purchase money has never obtained in this country, and ought never to have prevailed anywhere. It was without any reason or justice to support it. This court has had occasion to pass upon this question growing out of this very clause of the will of William Whitfield, in *Whitfield v. Burke,* 86 Miss. 435, 38 South. 550.

The purchaser, Lyon, bought the lands wholly on credit and never paid for the lands except in part. Such part as Lyon, the purchaser, did pay was, as he well knew, but paying the individual debts of William W. Whitfield and Lucy A. Whitfield.

The purchaser, Lyon, himself made the investment of such part as he did pay and instead of making the investment as the will required and his agreement recognized, so that the property bought should be "held under like limitations with the property sold," he in every instance invested it without any sort of limitation, so that it was quickly sold by the trustees and absolutely lost to the remainder man.

A man who makes himself party to the administration of a trust must execute that trust honestly and with good faith to the beneficiary, and a man who knowingly participates with a trustee in the abuse of his trust, can derive no advantages from that abuse. He is charged with the same liabilities as the trustee himself, if he becomes accessory to a violation of that trust, so far as claiming any benefit or reaping any advantage of that violation is involved. 2 Pom. Eq. Jur. 1048; *Field v. Schieffelin,* 7 Johns. Chanc. 207, Beach on Trusts and Trustees, § 721.

*R. C. Beckett and J. J. McCallum,* on the same side.

As to the insistence that Mrs. Lyon is a purchaser for value without notice. This defense first appears in the pleadings of this case as an affirmative defense set up in the answer of Mrs. Lyon to the cross-bill of appellants. In the original bill filed in this cause by Mrs. Lyon, she deraigned title and relies upon

·the title of Theodoric C. Lyon by reason of the fact that she .and others are his heirs at law, and sets up a conveyance from the other heirs at law to her. It is true that she states that Lyon made a conveyance of said property to her and her husband, yet it is not alleged in the bill that she paid a valuable consideration therefor, and the fact that she procured other ·deeds from the co-heirs, would negative rather than affirm that she paid a valuable consideration for said land, as a *bona fide* purchaser without notice.

This being an affirmative defense, and not in response to any allegations of the cross-bill of appellants, we submit that the burden of proof is upon the appellee to show such payment. There is no proof in this record, unless it be held by the court that the recital in the deed from Judge Lyon to Mrs. Lyon is to be treated as proof on this question. We confidently submit that such is not proof.

Counsel for appellants most earnestly insist that the recital in the deed from Lyon to Mrs. Lyon is proof of the purchase price there named, and is evidence of her *bona fide* purchase without notice, and seems to rest their case upon this proposition, citing the case of *Hiller v. Jones,* 66 Miss. 636, 6 South. 465 as con- ·clusive of this question.

We submit that the case before the court is clearly distinguishable from *Hiller v. Jones.* Judge CAMPBELL in announcing the rule laid down by him in that case rested his opinion upon the fact that purchasers of property had a right to rely upon the muniments of title as found upon the records, and the facts before the court in that case were a chain of record titles ·upon which the purchasers relied.

We have no such case before the court. Here, the counsel insist that the deed made to Mrs. Lyon, in which it is recited that she paid a valuable consideration, is to be taken as evidence of her payment. It cannot be insisted that she relied upon any recitals in that deed, or that she was misled by any record of that deed. Whatever 'transactions occurred between the pur-

chaser and the seller was simultaneous; she knew the facts; she could not rely upon any recital in that deed for the facts. Hence the principles announced by Judge CAMPBELL in *Hiller v. Jones* cannot prevail in this case.

Before Mrs. Lyon can rely upon a recital of payment of the consideration contained in the deed from Whitfield to Judge Lyon, she must first show that she was a purchaser for value in good faith without notice, of the lands conveyed by Whitfield to Lyon before she can set up any such recital as evidence. The facts set up in her bill show that Lyon dealt with this trust property in such manner as to become himself a trustee, charged with all of the trusts fixed upon said property. What if she did not know, at the time this property was conveyed to her, of these trust relations! If she did not pay a valuable consideration for said property without notice of said trust, then she cannot be heard to complain. Hence we repeat that she must first show that she has paid a valuable consideration for said property without notice, before the recitals of payment of consideration in the deed from William W. and Lucy Whitfield can avail her any relief.

The great weight of authority, including the supreme court of the United States, is against the rule announced by Judge CAMP-BELL in the case of *Hiller v. Jones,* and we think sound reason and justice is with the weight of authority.

*Orr & Harris,* for appellee and cross-appellant.

It is now conceded by the solicitor for the appellants that the English rule does not obtain in this country and that the purchaser of a trust estate is not bound to look to the proper application of the purchase money. We assume, therefore, that William Whitfield, Sr., meant exactly what he said in his will—That his son was fully vested with the power and discretion to sell any portion of his estate, negroes or land, whensoever and to whomsoever he might please, and that he intended for the purchaser to obtain a good title; for the language of the will is

"that the son may sell and convey a good title." 1 Leading Cases in Equity 123; *Elliott v. Merryman* and numerous cases therein cited. See page 130; *Davis v. Christian,* 15 Grattan, 11, 62 Texas, 351; *Harris v. Smith,* 98 Tenn. (Pickle) 14; *Carroll v. Shea,* 149 Mass. 317.

The charge of bad faith on the part of Theodoric C. Lyon is without any foundation in fact. It does the memory of that gentleman a grievous injustice. He was known in the community in which he had been reared, and lived for many years, as an honorable, high-toned, truthful gentleman. The example, the training, the teaching of his distinguished father had been such as to leave its imprint on the life and character of this son; and he was known to be the type of man who would have scorned to do a wrong or perpetrate such an act as he is charged with in this instance.

It is shown by the record beyond the possibility of controversy, that Lyon paid every dollar of the $17,400.00 which he promised to pay, for these lands.

*Alexander & Alexander,* on the same side.

The power conferred upon the life tenants, William W. and Lucy A. Whitfield, by the will of their father, is not a simple power to sell.

Viewing this provision merely as an ordinary power to sell for reinvestment of the proceeds, this court has already held that there was no duty on the purchaser to see to the application of the proceeds, but this clause goes further than to give an ordinary power to sell for reinvestment. It expressly provides that if a sale is made "the title shall be good to the purchaser," and then proceeds to direct that the fund is to be reinvested. It is not left to implication or inference or as a mere legal conclusion that the purchaser shall get a good title, but, as if to put the matter beyond all question, the clause itself declares that the purchaser shall get a good title and immediately afterwards directs that the life tenant shall invest the proceeds..

It is very material also to notice that the reinvestment is not required to be made in lands but "in any other productive and valuable property." The clause deals with both real and personal property, and the power is given to both alike and the proceeds of sale may be invested at will in any kind of productive property.

The features and distinction above pointed out are not important as affecting the question whether Theodoric C. Lyon, the purchaser, was under obligation to see to the application of the proceeds, for this court has already decided on this very will that the purchaser is not under such duty. They are important in view of the contention which seems to be made by the appellants, children of William W. Whitfield, that he and their Aunt Lucy engaged in a deliberate scheme to defraud them and that Theodoric C. Lyon was in complicity with them or at least knew of it and aided in it.

The appellants in their brief treat the whole case as if it depended upon the question whether the purchase price was in fact paid by Theodoric C. Lyon.

Rev. J. A. Lyon and his wife, Mrs. A. E. Lyon, were *bona fide* puchasers for value. One who sets up and relies on fraud or secret equities must connect the parties to the suit with it. Surely, it did not devolve on the complainant, Mrs. A. E. Lyon, who set up a perfect chain of title to herself, to anticipate that defendants would charge fraud against their own father and then meet the defense of the bill. The bill deraigned the title of Mrs. Lyon and alleged payment by Judge Lyon for the purchase of the land and then alleged the purchases by her and her husband, Rev. J. A. Lyon. These deeds recite the payment of the consideration, the one of $10,000 and the other of $200 and other considerations paid.

Has the claim or defense of *bona fide* purchaser been sustained? Unquestionably. It is said by counsel for appellants that it is an affirmative defense and must be both pleaded and proven, and *Graves v. Alkinson* and other authorities are cited.

We admit that this is the ordinary rule, but the rule is equally well settled that when a deed duly recorded and reciting payment of a consideration is shown, this makes a *prima facie* case as to the payment of the consideration, and under the rule stated in *Graves v. Atkinson,* and almost everywhere, raises the further presumption that the payment was made in good faith. *Hiller v. Jones,* 66 Miss. 636, 6 South. 465 ; *Hart v. Gardner,* 81 Miss. 650, 33 South. 442, 497.

If the will had not contained a power to sell, the subsequent purchasers would be charged, of course, with knowledge of the will and with the limitation on the estate of the grantors, but since the will conferred the power, and since the deed recited that it was made in execution of the power and recited full payment of the purchase price, the fact that the estate in William W. and Lucy A. was a mere life estate is immaterial as affecting subsequent purchasers with notice. If the testator reposed trust in his sons, and gave them the power to sell, it necessarily followed that if there was any abuse of the power or perversion of the trust, the subsequent purchasers who relied on the recitals in the recorded deed are not the ones to suffer. They reposed no trust in William W. and Lucy A. Whitfield. Their father did repose trust in them, and if the trust was abused, he and those for whom he sought to provide must suffer, not the innocent purchasers who bought in reliance of the public records as memorials of titles.

Argued orally by *J. J. McClelland,* for appellants and by *J. A. Orr* and *C. H. Alexander,* for appellee.

MAYES, Special Judge, delivered the opinion of the court.*

This case presents two controversies, arising under the fifteenth article of the will of William Whitfield, who died in

---

* Chief Justice WHITFIELD, being related to some of the parties, recused himself in this case, and EDWARD MAYES, ESQ., a member of the supreme court bar, was appointed a special judge by the governor, and presided in this case in place of the Chief Justice.

1854. See *Whitfield v. Burke*, 86 Miss. 435, 38 South. 550, 109 Am. St. Rep. 714. The lands in dispute were by that will devised to his two sons, William W. and John A., for terms of their natural lives, respectively, with remainders in each case to the surviving children of the testator, and after them to the grandchildren. John A. died in 1863, without issue, and William W. and a sister, Lucy A., were his heirs. The fifteenth article of the will contained the following provisions:

"Nevertheless, I hereby authorize my sons, if they desire, or if either of them are desirous, to sell the real estate devised to him for the purpose of purchasing other lands or other productive property, * * * to sell the real estate * * * for the reasons above given, and the title shall be good to the purchaser. The proceeds of the sale, however, is to be invested in other productive and valuable property, and is to be held under the limitations and conditions of all the property so held by them."

The facts out of which these controversies have developed are somewhat complicated, and are now, by lapse of time and the deaths of parties, quite obscure; but we shall endeavor to state them intelligibly so far as known.

It seems that in February, 1873, Nathan W. Whitfield, one of the children of William W., and therefore one of the remaindermen under the will, borrowed from Theodoric C. Lyon the sum of $800, which was invested in a homestead for Nathan W., and for which he executed his promissory note, with his father, his brother, and his aunt as securities. In February, 1874, there were large amounts of taxes due on the Whitfield lands, and William W. and Lucy A. borrowed from Samuel Kline the sum of $3,375 to pay the same, having no other resources because of the low conditions of agriculture at that time, and apparently they applied the money to that use. They executed a trust deed to secure those moneys on certain lands, including three hundred and twenty acres of the land in controversy. On April 28, 1874, William W. Whitfield and Lucy A.

made a written agreement to sell to Theodoric C. Lyon, by description, one thousand and eighty acres of the Whitfield lands, including five hundred and sixty acres of the lands mortgaged to Kline, for an aggregate estimated sum of $17,393.50, to be paid as follows: Lyon to pay four purchase notes, theretofore executed by William W. for his residence (the Gray Mount or Yates place) near Columbus, being "near six thousand dollars;" Lyon to cancel the $800 note held by him, being for money invested in residence of Nathan W. as aforesaid; Lyon to convey to William W. and Lucy A. the iron front store in Columbus, or other property of equal value if the store property could not be entailed; also Lyon to pay $4,000 to be invested in real estate according to the terms of William W. Whitfield's will—preferably in part payment for the Worley place, which place had been previously purchased by William W. Whitfield for $8,871 on credit from the Banks family. This written agreement was never recorded. A deed was executed by William W. Whitfield and Lucy A., which bears the same date as the agreement; but it was not acknowledged until the 12th of August following. There is no direct evidence to explain this apparent delay in the delivery of the deed. More than thirty years have passed, and all of the actors in these transactions are deceased. There is no testimony from any of them.

At the April term, 1874, the Banks creditors recovered judgment against William W. Whitfield and his two sons on the debt above mentioned as purchase money of the Worley place in the sum of $8,832.50; and on July 9th following Lyon paid on that judgment the sum of $4,000. Some time prior to June 23, 1874, Lyon paid off one of the four last $1,200 notes owing by William W. Whitfield for purchase of his residence, the Gray Mount place; and on that day he also executed to Whitfield a penal bond, with Yates himself as surety, in the sum of $5,000, conditioned for the payment of the three remaining notes. On August 11th a deed by Lyon to William W. and Lucy A. Whitfield, conveying the iron front store property, for the stated con-

sideration of $6,500, was executed and lodged for record. On the following day, the 12th, as shown above, the deed by the two Whitfields, conveying to Lyon lands contracted for, was acknowledged, and probably delivered. On the 13th the Whitfields conveyed the iron front store to one Dillahunty for the stated consideration of $5,500 paid; and on that same day the balance of $5,050, then owing on the Banks judgment for purchase money of the Worley place, was "fully satisfied and discharged by arrangements between the parties." On the 6th day of January, 1875, Lyon sold six hundred and forty acres of the land conveyed to him by the Whitfields to his parents, Dr. J. A. Lyon and Mrs. Adelaide E. Lyon, for the stated consideration of $10,000 paid. This deed embraced three hundred and twenty acres which had been mortgaged to Kline, as stated above.

To this point of time and events even this fragmentary and obscure record shows clearly that Theoderic C. Lyon had exactly fulfilled his assumptions by the agreement of purchase. The agreement itself was practically a satisfaction of the $800 note, and it disappears; he paid the $1,200 note of 1874 to Yates on the Gray Mount place, and the interest; he paid the $4,000 on the banks judgment for purchase money of the Worley place; he conveyed the iron front store property; in all, he had paid about $13,000. It only remained for him to pay the three $1,200 notes and interest, executed to Yates for the Gray Mount place, falling due, respectively, on the 1st days of March, 1875, 1876, and 1877. He failed to pay the note of 1875. There is no testimony showing the reason for such failure. It is left to conjecture. It will now be recalled that, when the Whitfields conveyed the one thousand and eighty acres to Lyon by their warranty deed in 1874, part of the same, amounting to five hundred and sixty acres, was under mortgage to Kline. The Whitfields did not make good their warranty, but failed to pay their note due February 1, 1875, and on April 13, 1875, the lands embraced in the Kline trust deed were accordingly sold because

of that default, were bought in by Kline, and were lost to Lyon. We may conjecture that these facts caused Lyon's failure to pay the $1,200 of March 1, 1875. Then on May 24, 1875, Lyon having failed to pay that note and the whole debt thereby maturing by provision of the trust deed, the Gray Mount place was sold by the trustee to Dr. C. M. Vaiden for $4,800.

On the same day, May 24th, Whitfield filed a bill against Yates, Lyon, the trustee, Leigh, and others, setting up the agreement of June 23, 1874, whereby Lyon gave bond, with Yates himself as surety, for the payment of the three notes falling due in 1875, 1876, and 1877, alleging that by the execution of such bond these notes were all in effect discharged, and praying for an injunction of the proposed sale by the trustee. This bill did not stop the sale, which occurred notwithstanding, as stated above. Shortly afterwards the bill was dismissed by complainant, and then an action of debt was brought against Lyon and Yates in the circuit court. This suit is only shown by docket entries. The declaration is not in the record. Counsel here say in their brief that it was on the bond. There was a trial, and a judgment for the defense. Meanwhile, Kline brought an action of ejectment against Lyon to the April term, and recovered judgment at the November term following. In June, 1875, Lyon executed a second deed to his father and mother conveying certain other lands of those purchased by him from the Whitfields, in consideration of $200 paid and the failure of title to the three hundred and twenty acres of their lands so sold under the Kline trust deed. No other claim or demand seems ever to have been asserted by the Whitfields against Lyon because of his failure to pay the three Yates notes; and, unless this failure to pay be taken for such, Yates never received any compensation, so far as this record shows, for the failure of title to the lands of his parents and himself so sold under the Kline trust deed.

Miss Lucy A. Whitfield died childless in 1887. William W. Whitfield died January, 1903, leaving children, who are the ap-

pellants on the first branch of this case. Rev. J. A. Lyon died in 1882, and Mrs. Lyon took his interest in the lands by survivorship, as their title was by the entirety. Later T. C. Lyon died childless, and his brothers and sisters released to their mother, Mrs. Lyon, in 1904. Mrs. Lyon filed this bill in 1905 against the children of William W. Whitfield and the heirs of Kline to remove clouds. The cause presented two controversies: First, between Mrs. Lyon and the children of William W. Whitfield about the lands conveyed to Theodoric C. Lyon in 1874, excluding those embraced in and lost by the Kline mortgage; and, secondly, between Mrs. Lyon and the Klines about those lands which were embraced in and lost by the Kline mortgage. The court below confirmed Mrs. Lyon's title as against the Whitfields and they have appealed. It decreed adversely to Mrs. Lyon as to the Klines, and she appealed on that branch of the case.

It is here contended by the Whitfields appellants, first, that Theoderic C. Lyon failed to pay for the lands conveyed to him as required by his purchase contract; and, secondly, that William W. and Lucy A. conveyed in violation of their father's will, and not for reinvestment, and that Theoderic C. Lyon knew of and participated in their wrongdoing. Wherefore his mother cannot succeed; she being chargeable with notice, and there being no evidence that she was a *bona fide* purchaser for value. That Theoderic C. Lyon discharged his obligations under the agreement of purchase with the exception, possibly of the payment of the three notes of $1,200 each to Yates, appears clear, as stated above. If he did not pay the three notes, the record shows what is apparently good and adequate reason, in that he seems to have failed to get five hundred and sixty acres of the land warranted to him. The record discloses no effort by the Whitfields to make their broken warranty good. It shows no claim asserted against Lyon or Mrs. Lyon for any liability during a period of thirty years. It is difficult to see how they can now claim that he was in default in that particular.

As to the second proposition, we find nothing in this record to show either that William W. or Lucy A. Whitfield designed in these transactions to defeat the provisions of their father's will. It is true that the proceeds of the land sold to Lyon were used in discharging their liabilities; but those liabilities were debts incurred in the purchase of other valuable lands, which stood there to represent the lands sold. We see no substantial difference between selling and applying the cash proceeds of the Lyon lands to the original purchase of other lands, on the one hand, and their application to the extinguishment of a purchase debt for such other lands, on the other hand. The substantial result is the same, and it is in effect the simple exchange of the one for the other.

But it is urged that the lands so received by way of exchange were acquired with the fee in Whitfield, and with no limitations over in remainder to his children. That is true; but there is no evidence that, at the time of the sale to Lyon, Whitfield had any other intention than to comply literally with the terms of his father's will, and settle a remainder on the parties entitled (who, it will be remembered, were his own children). The agreement with Lyon clearly expresses such an intention as to the greater part of the purchase price. However, even if it were shown that the arrangements made by William W. Whitfield and Lucy A. were intended to oust the remaindermen, there is no evidence that Lyon had knowledge of such purpose, or participated in it. Such knowledge and participation are imputed to him because of certain details; but those details are entirely consistent with fidelity at the time in the Whitfields to the obligations of the will. Subsequent events cannot be used against Lyon. His good faith and merit must be judged by things as they were when he contracted. His action seems to have been free from blame.

The $800 note discharged was the obligation of two of the remaindermen. The four notes, of $1,200 each, with interest, held by Yates, which he undertook to pay, were the purchase

.money notes for a home for William W., the title to which was then in him; and Lyon is not shown to have had any reason whatever to believe that he intended to divert from the remain- ·dermen, who were all his children, their natural inheritance, or to believe that he would fail to settle upon them a title in re- mainder, as he easily might have .done. As to the residue of ·the value to be paid by Lyon, the agreement expressly stipulated that. the limitations of the will should be observed. It is true that the residue of value was employed in paying off William W's liabilities on the purchase money of the Worley place; but the agreement expressly mentioned that place as an investment to be made in accordance with the will, and Lyon had no reason to know or believe, so far as this record discloses, that William W. would fail to settle the title accordingly.

· We turn now to the Kline branch of the case. It is claimed by Mrs. Lyon's heirs that the Kline title was only an estate for the life of William W. Whitfield, and terminated with his death in 1903. It is claimed by them to have been only a life estate, because the will of William Whitfield only authorized a sale of ·the fee for reinvestment, and not a mortgage for borrowed money. Whatever force there may be in this position as a general proposition, we hold that it does not apply in this in- ·stance. We decide this case on the special facts. The Kline answer averred, and McQuown's deposition proves, that the ·money was borrowed in order to pay taxes on the Whitfield lands, and that the Whitfields were without other resources to pay the taxes, and that moneys were so applied. In such case this expenditure was indispensably necessary to the preserva- tion of the estates, both of the lands mortgaged and of the other 'lands. As to these and, all the lands, William W. and Lucy A. were trustees of the fee for the remaindermen; and to preserve ·the *corpus* of the estate against the paramount demand and lien for taxes, and against a forfeiture, we think they had power to ·mortgage a part of the lands for that purpose by necessity, in. · order to carry out the general expressed purpose of the will. It

gave them a further opportunity to pay what was obliged to be paid. True, the primary obligation to pay these taxes was,. as between them and the remaindermen, on them; but as against. the demand of the taxing power the liability was against the whole estate, and the lender could bargain for a straight mortgage on the fee or else lend. no money. Of course, a trustee,. dealing with the trust estate without previous leave of the court, so deals at his peril, and his action will be closely scrutinized; but in this case it seems to have been proper. We hold that the Kline mortgage and sale carried the fee, under the special facts.

The decree of the chancery court is *affirmed* on both appeals.